**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com

*Counsel for Plaintiff Christopher McCluney*
*[Additional counsel appears on signature page]*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHRISTOPHER MCCLUNEY, Individually and on Behalf of All Others Similarly Situated, | Case No: |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR A JURY TRIAL** |
| TREACE MEDICAL CONCEPTS, INC., JOHN T. TREACE, and MARK L. HAIR, | |
| Defendants. | |

Plaintiff Christopher McCluney ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Treace Medical Concepts, Inc. ("Treace Medical" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Treace Medical; and (c) review of other publicly available information concerning Treace Medical.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of all persons and entities that purchased or otherwise acquired Treace Medical securities between May 8, 2023, and May 7, 2024, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants (defined *infra*) under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose that: (1) competition impacted the demand for and utilization of its primary product, the Lapiplasty 3D Bunion Correction System (the "Lapiplasty"); (2)  as a result, Treace Medical's revenue declined and the Company needed to accelerate its plans to offer a product that was an alternative to osteotomy (a surgical procedure that involves cutting and realigning a bone to improve its position or function); and (3) Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

3.      As a result of Defendants' wrongful acts, omission, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

4.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this District.

7.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

8.     Plaintiff Christopher McCluney, as set forth in the accompanying certification, incorporated by reference herein, purchased Treace Medical securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

9.     Defendant Treace Medical is a medical technology company focused on advancing the standard of care for the surgical management of bunion and related midfoot deformities.  Treace Medical's common stock trades on the NASDAQ under the symbol "TMCI."

10.     Defendant John T. Treace ("Treace") founded the Company, has served as the Company's Chief Executive Officer ("CEO"), and served as a member of the Company's Board of Directors (the "Board") since 2014.

11.     Defendant Mark L. Hair ("Hair") has served as the Company's Chief Financial Officer ("CFO") since September 2020.

12.     Defendants Treace and Hair (together, the "Individual Defendants" and together with the Company, "Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material, nonpublic information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

13.     The Company is focused on advancing the standard of care for the surgical management of bunion and related midfoot deformities. It has patented the Lapiplasty, a combination of instruments, implants, and surgical methods designed to surgically correct all three planes of the bunion deformity and secure the unstable joint. The Company sells

these products to physicians, surgeons, hospitals and ambulatory surgery centers in the United States.  A key business metric the Company reports is the average selling price ("ASP") generated by from each Lapiplasty kit sold to surgeons.

## FALSE AND MISLEADING STATEMENTS

14.    On May 8, 2023, the start of the Class Period, after market hours, Treace Medical issued a press release, on a Form 8-K filed with the SEC, reporting its financial results for first quarter 2023 and fiscal year 2023 outlook, respectively. The press release stated, in relevant part:

**First Quarter 2023 Financial Results**

Revenue for the first quarter of 2023 was $42.2 million, representing an increase of 45% compared to $29.0 million in the first quarter of 2022. The increase was driven by an increased number of Lapiplasty® procedure kits sold as a result of an expanded surgeon customer base and increased blended average selling prices due to increased adoption of our newer technologies and expanding product line.

Gross profit for the first quarter of 2023 was $34.2 million, representing an increase of 43% compared to a gross profit of $23.9 million in the first quarter of 2022. Gross margin totaled 80.9% in the first quarter of 2023, compared to 82.3% in the first quarter of 2022. The decrease was primarily due to an increase in payroll costs and an increase in inventory and obsolescence provisions.

Total operating expenses were $47.9 million in the first quarter of 2023, including sales and marketing (S&M) expenses of $33.7 million, research and development (R&D) expenses of $3.4 million, and general and administrative (G&A) expenses of $10.9 million. This compared to total operating expenses of $32.0 million, including S&M expenses of $22.3 million, R&D expenses of $3.1 million, and G&A expenses of $6.7 million in the first quarter of 2022. Increased operating expenses in the first quarter of 2023 reflect increased investments in our commercial initiatives as well as other G&A investments supporting our growing business.

First quarter net loss attributable to common stockholders was ($13.5) million, or ($0.23) per share, compared to a net loss of ($9.0) million, or ($0.16) per share, for the same period of 2022. Adjusted EBITDA was a loss of ($10.0) million in the first quarter, compared to a loss of ($6.4) million for

the same period in 2022. See below for additional information and a reconciliation of non-GAAP financial information.

**Financial Outlook**

Treace is raising its full year 2023 revenue guidance to $190 million to $196 million, which represents approximately 34% to 38% growth over the Company's 2022 revenue. This compares to the prior revenue guidance of $187 million to $193 million.

15.    During the associated earnings call on the same day, Treace touted the

strength of Lapiplasty as a product and assured investors that it was not experiencing an

impact from competition. Specifically, Treace stated, in relevant part:

There are other products in the marketplace being offered from other companies. Most of these are kind of highly diversified companies with large bags of products. We're not really seeing any incremental, I think, opposition to our momentum coming from these.

In some ways, they're just further validating what we started and what we developed long ago. Any of these companies' products and offerings get like a fractional portion of their sales team's time and attention. And what we found is with over nearly 8 years of refinement, Lapiplasty is just so elegant and reproducible. It's frankly just unmatched in performance at the doctor-patient interface. And we continue to wrap more patents around what we're doing, making it a little more challenging for companies to make something that can truly replicate the elegance of Lapiplasty, so.

16.    On August 16, 2023, the Company presented at the UBS MedTech, Tools

and Genomics Summit. Treace touted the strength of the Company's patented Lapiplasty

products, assuring investors that competitors are unable to sufficiently compete with the

design. Specifically, Treace stated, in relevant part:

So we've had several competitors, "competitors," out there in the marketplace for the last several years, one introduced in early 2020 from a major player. I don't think that product has changed in form or design to this day. At the same time, Treace Medical has changed its instrumentation in its implants 3 times. And with SpeedPlate and Micro, it will be 4 times. So I think it's really hard for these multiline -- and these are excellent companies, we have tremendous respect for them, by the way -- but just the reality of all the product lines they're carrying and the salespeople that have to go in with a very large bag of items and try to target this one procedure that we

6

are absolute experts in. And we haven't seen a technology that can match Lapiplasty at the surgeon/patient interface yet.

17.    On January 9, 2024, the Company presented at the J.P. Morgan Annual Healthcare Conference. During the presentation, Treace assured investors that increasing utilization from the Company's surgeons was fueling demand for Lapiplasty. Specifically, Treace stated, in relevant part:

And we'll continue to add just to support our customer surgeon base, as we talked about earlier is with the utilization ramp there are more and more cases coming from our existing customer surgeon base. So we will need to add in order to successfully support all of the demand that comes from our existing base as well as attracting new surgeons as well.

18.    On February 27, 2024, after market hours, the Company issued a press release, on a Form 8-K filed with the SEC, reporting its financial results for fourth quarter 2023, fiscal year 2023, respectively, and reporting fiscal year 2024 outlook. The press release stated, in relevant part:

**Fourth Quarter 2023 Financial Results**

Revenue for the fourth quarter of 2023 was $62.2 million, representing an increase of 25% compared to $49.8 million in the fourth quarter of 2022. The increase was driven by an increased number of Lapiplasty® procedure kits sold as a result of an expanded surgeon customer base, increased utilization and higher blended average selling prices due to increased adoption of the Company's newer technologies and expanding portfolio of complementary products.

Gross profit for the fourth quarter of 2023 was $50.7 million, representing an increase of 25% compared to a gross profit of $40.7 million in the fourth quarter of 2022. Gross margin totaled 81.6% in the fourth quarter of 2023, compared to 81.9% in fourth quarter of 2022, primarily due to changes in product mix and an increase in overhead costs due to headcount to support the growing business, partially offset by lower royalty rates and a decrease in inventory provisions.

*    *    *

**Full-Year 2023 Financial Results**

7

Revenue for the full-year 2023 was $187.1 million, representing an increase of 32% compared to $141.8 million in 2022. This increase was driven by an increased number of Lapiplasty® procedure kits sold as a result of an expanded surgeon customer base and higher blended average selling prices due to increased adoption of the Company's newer technologies and expanding product line.

Gross profit for the full-year 2023 was $151.9 million, representing an increase of 31% compared to a gross profit of $116.3 million in 2022. Gross margin was 81.2% in 2023, compared to 82.0% in 2022. The decrease in gross margin was primarily due to changes in product mix, an increase in inventory provisions, and an increase in overhead costs due to headcount to support the growing business, partially offset by lower royalty rates.

*   *   *

**Financial Outlook**

Treace expects revenue for the full-year 2024 to be $220 million to $225 million, which represents approximately 18% to 20% growth over full-year 2023 revenue.

The Company expects to make significant progress towards Adjusted EBITDA breakeven for full-year 2024 and anticipates Adjusted EBITDA to improve approximately 50% compared to full-year 2023.

19.     During the associated earnings call the same day, Hair informed investors that the Company continued to "add a lot of surgeons" and, as a result, the surgeons' Lapiplasty utilization rates would increase. Specifically, Hair stated, in relevant part:

We've had nearly 40% of our active surgeon base [] come on board in the last 24 months, so in the last 2 years. So we continue to make great strides in adding active surgeons year after year.

So what that means, we have a little bit of a step function and surgeons come in initially. They're doing around 6 cases in their first 12 months, and it continues to build up to nearly 20 cases after 5 or 6 years.

So it's unique, they get experience with Lapiplasty and then they tend to utilize Lapiplasty more and more in their practices. And so mathematically, if you were to take away all these earlier or more recent, I should say, more recent surgeons that have come aboard who typically do fewer cases per year, our average utilization is much higher than what we've reported.

So I think that's a good problem to have, meaning we continue to add a lot of surgeons and we know that those who have been around longer just do more and so we expect utilization to continue to increase, notwithstanding the fact that we will continue to add a lot more surgeons in 2024 and beyond.

## **THE TRUTH EMERGES**

20.     The truth began to emerge on May 7, 2024, after market hours, when the Company issued a press release, on a Form 8-K filed with the SEC, reporting its financial results for first quarter 2024 and fiscal year 2024 outlook, respectively. The press release stated, in relevant part:

**First Quarter 2024 Financial Results**

Revenue for the first quarter of 2024 was $51.1 million, representing an increase of 21% compared to $42.2 million in the first quarter of 2023. The increase was driven by higher volume of procedure kits sold as a result of an expanded surgeon customer base and a product mix shift that resulted from increased adoption of newer technologies and increased sales of complementary products used in bunion and related midfoot procedures.

Gross profit for the first quarter of 2024 was $41.0 million, representing an increase of 20% compared to a gross profit of $34.2 million in the first quarter of 2023. Gross margin totaled 80.2% in the first quarter of 2024, compared to 80.9% in the first quarter of 2023, primarily due to a shift in product mix to newer products, partially offset by lower royalty rates.

Total operating expenses were $59.9 million in the first quarter of 2024, compared to total operating expenses of $47.9 million in the first quarter of 2023. Increased operating expenses in the first quarter of 2024, including share-based compensation expense, reflect strategic investments in the Company's expanding direct sales channel, investments in product innovation, and support for other corporate initiatives.

First quarter 2024 net loss attributable to common stockholders was ($18.7) million, or ($0.30) per share, compared to ($13.5) million, or ($0.23) per share, for the same period in 2023. Adjusted EBITDA loss was ($8.3) million in the first quarter of 2024 compared to a loss of ($10.0) million for the same period in 2023. See below for additional information and a reconciliation of non-GAAP financial information.

Cash, cash equivalents, marketable securities and investment receivable totaled $112.1 million as of March 31, 2024. The Company believes it has sufficient balance sheet strength and flexibility to continue effectively

executing on its strategic investments and growth initiatives for the foreseeable future.

**Financial Outlook**

The Company now expects full-year 2024 revenue of $201 million to $211 million, representing growth of 7% to 13%, compared to full-year 2023. This compares to previous guidance of $220 million to $225 million.

The Company continues to expect to make significant improvement in Adjusted EBITDA for full-year 2024 and anticipates Adjusted EBITDA to improve approximately 50% compared to full-year 2023.

21.    During the associated earnings call the same day, Treace revealed competition from minimally invasive ("MIS") osteotomy and Lapiplasty "knockoffs" created headwinds for Lapiplasty growth. Treace also revealed the Company would release its own MIS osteotomy system. Specifically, Treace stated, in relevant part:

Despite our strong start to the year with expected growth opportunities stemming from product launches and new innovations I just mentioned, it's become clear that the market environment and competitive landscape is quickly evolving, and we've made the decision to revise guidance for fiscal 2024. We have decided to do this now because we're seeing increased use in surgeon adoption of MIS Osteotomy solutions. At the same time, we're facing even more competition from knockoffs of our Lapiplasty products. Both of these dynamics are creating incremental headwinds to our Lapiplasty growth.

Specific to these knockoffs, we fundamentally believe that none of these systems match Lapiplasty's performance and reproducibility at the surgeon-patient interface, nor are they supported by the strong differentiating clinical data sets that Lapiplasty offers. We also believe some of these competing products are violating our IP.

With this backdrop, I'd like to spend the next few minutes reviewing our strategy to expand our offerings and advance our business. While building our leading position in the Lapidus segment of the bunion market, we've simultaneously been pursuing a strategy to advance Treace from a company focused solely on Lapidus and related solutions to a comprehensive bunion solutions company.

Meaning, to implement our strategy to expand our bunion solution portfolio, we plan to launch 2 innovative 3D MIS Osteotomy systems in late 2024 into the metatarsal osteotomy segment of the market, which accounts for 70%

of the overall procedure volume today and into our base of nearly 3,000 surgeon customers. Once launched, our customers who love Lapiplasty but still perform on average over half their bunion cases using metatarsal osteotomies will then have a Treace product to address all of their Lapidus and osteotomy bunding cases.

Additionally, we expect our MIS Osteotomy solutions will afford us the opportunity to appeal to a new group of surgeons, those with a strong bias for using osteotomy approaches for the majority of their bunion patients. We expect to see the positive benefit of these new MIS innovations starting in the fourth quarter of this year and ramping throughout 2025.

22.    Later on the call, Hair revealed there had also been a shift in surgeon demand for Lapiplasty. Specifically, Treace stated, in relevant part:

One thing that we continue to see is a nice steady uptick of surgeon -- net surgeon adds. So we continue -- we had 475 adds last year. We've had a lot of surgeon adds. We've had healthy surgeon additions this year as well. So we continue to see that. It's been more of -- surgeons have always had the option of how to approach unions. And so we believe that Lapiplasty provides a great solution. We have a lot of clinical data, we believe, more than any other Lapidus type solution.

And so we have a lot of confidence that our Lapiplasty solution gives great results, and it's elegantly designed for surgeons. We constantly and regularly hear how much they appreciate the design in the OR, we've made it faster and more effective and more efficient. However, surgeons have always had the option of whether or not they're going to approach a patient surgery with a Lapidus procedure or an osteotomy. And there have been some differences between the 2 approaches.

And so we continue to see that, and some surgeons continue to use Lapiplasty but may have may decide that maybe the percentage of the Lapis or the Lapiplasty procedures in their overall patient base is shifting a little bit. So it's more of that. I don't want to say that's the answer for every surgeon because every surgeon is different, but we've definitely seen a trend that MIS Osteotomies are more and more of the overall procedure base.

23.    On this news, the Company's stock price fell $6.95, or nearly 63%, to close at $4.17 per share on May 8, 2024, on unusually high volume.

11

## **CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Treace Medical securities between May 8, 2023, to May 7, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Treace Medical's shares are actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Treace Medical securities were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Treace Medical or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> (a) whether the federal securities laws were violated by Defendants' actions as alleged herein;
>
> (b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Treace Medical; and
>
> (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

29.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30.    The market for Treace Medical's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Treace Medical's securities traded at artificially

inflated prices during the Class Period.  Plaintiff and other members of the Class, relying upon the integrity of the market price of the Company's securities and market information relating to Treace Medical, purchased or otherwise acquired Treace Medical's securities and have been damaged thereby.

31.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Treace Medical's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Treace Medical's business, operations, and prospects as alleged herein.

32.    At all relevant times, the material misrepresentations and omissions particularized in this Amended Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Treace Medical's financial well-being and prospects.  These material misstatements and/or omissions had the effect of creating, in the market, an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially

inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33.     During the Class Period, Plaintiff and the Class purchased Treace Medical's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Treace Medical, their control over, and/or receipt and/or modification of Treace Medical's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Treace Medical, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD -ON-THE-MARKET DOCTRINE)

35.    The market for Treace Medical's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Treace Medical's securities traded at artificially inflated prices during the Class Period.  On May 22, 2023, the Company's share price closed at a Class Period-high of $26.90 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Treace Medical's securities and market information relating to Treace Medical, and have been damaged thereby.

36.    During the Class Period, the artificial inflation of Treace Medical's share prices were caused by the material misrepresentations and/or omissions particularized in this Amended Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Treace Medical's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Treace Medical and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.     At all relevant times, the market for Treace Medical's securities was an efficient market for the following reasons, among others:

(a)     Treace Medical shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market.

(b)     As a regulated issuer, Treace Medical filed periodic public reports with the SEC and/or the NASDAQ.

(c)     Treace Medical regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Treace Medical was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for Treace Medical's securities promptly digested current information regarding Treace Medical from all publicly available sources and reflected such information in Treace Medical's share price.  Under these circumstances, all purchasers of Treace Medical's securities during the Class Period

suffered similar injury through their purchase of Treace Medical's securities at artificially inflated prices and a presumption of reliance applies.

39.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

40.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Amended Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking

statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Treace Medical who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

41.    This Count is asserted against each Defendant and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.  All Defendants are sued as primary participants in the wrongful and illegal conduct charged in this Count.

42.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Treace Medical's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Treace Medical's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

44.     Specifically, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 through at least the following materially false and misleading public statements made during the Class Period: (i) May 8, 2023 press release on a Form 8-K filed with the SEC; (ii) May 8, 2023 Earnings Call; (iii) August 16, 2023 presentation at the UBS MedTech, Tools and Genomics Summit; (iv) January 9, 2024 presentation at the J.P. Morgan Annual Healthcare Conference; (v) February 27, 2024 Press Release on a Form 8-K filed with the SEC; and (vi) February 27, 2024 Earnings Call.  The specific portions of those public statements that were materially false and misleading are set forth herein at Paragraphs 14 through 19.

45.     For example, in the press release issued by the Company on May 8, 2023, and during the earnings call the same day, Treace, on behalf of the Company, touted the strength of Lapiplasty as a product and assured investors that it was not experiencing an impact from competition.  Throughout the Class Period, the Company and Treace continued to issue press releases, financial results, and make statements that falsely or misleadingly touted demand for Lapiplasty and assured investors competition was not an issue.  Hair made similar false and misleading statements throughout the Class Period. For example, on February 27, 2024, during the earnings call associated with the release of the Company's financial results for fourth quarter 2023, fiscal year 2023, respectively, and reporting fiscal year 2024 outlook, Hair told investors that, based on historical trends, surgeons' utilization rates of Lapiplasty would increase as the Company continues to "add a lot of surgeons."

46.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails and wires,

engaged and participated in a continuous course of conduct to conceal adverse material information about Treace Medical's financial well-being and prospects, as specified herein.

47.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse nonpublic information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Treace Medical's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Treace Medical and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times;

and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  For example, Defendants saw sales reports and surgeon utilization rates showing the Company was losing market share to competitors and that surgeons' utilization rates were decreasing as a result.    Such Defendant's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Treace Medical's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Treace Medical's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by

Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Treace Medical's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Treace Medical was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Treace Medical securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

<strong><u>SECOND CLAIM</u></strong>

<strong>Violation of Section 20(a) of the Exchange Act<br><u>Against the Individual Defendants</u></strong>

54.    This Count is asserted against the Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  The Individual Defendants are

sued as control persons of a primary violator of the Exchange Act, as explained immediately below.

55.    Individual Defendants acted as controlling persons of Treace Medical within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    For example, during the earnings call on May 8, 2024, Treace told investors that the Company was not "really seeing any incremental . . . opposition to [the Company's] momentum coming from these [competitors' devices.]"  This indicates that Treace had knowledge of the Company's sales and incremental market share compared to competitors.  Likewise, during the earnings call on February 27, 2024, Hair told investors that the Company "continue[s] to add a lot of surgeons and [the Company] know[s] that those who have been around longer just do more and so [the Company] expect[s] utilization to continue to increase, notwithstanding the fact that [the Company]

will continue to add a lot more surgeons in 2024 and beyond." This indicates that Hair has knowledge of the Company's surgeon acquisition rate and the surgeons' utilization rates, which directly impact demand for Lapiplasty.

57.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     Treace Medical and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Amended Complaint, including by making the materially false and misleading public statements detailed above in Paragraphs 14 through 19. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.  Such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a jury trial.

DATED:  April 28, 2025          **CRIDEN & LOVE, P.A.**

 */s/ Lindsey C. Grossman*
Lindsey C. Grossman (No. 105185)
Michael E. Criden (No. 714356)
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 375-9000
lgrossman@cridenlove.com
mcriden@cridenlove.com

*Local Counsel for Plaintiff Christopher McCluney*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV* (*pro hac vice* forthcoming)
Matthew A. Peller (*pro hac vice* forthcoming)
Nicholas S. Bruno (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
mpeller@scott-scott.com
nbruno@scott-scott.com

*Counsel for Plaintiff Christopher McCluney*

*\*Designated Lead Counsel for Plaintiff Christopher McCluney, pursuant to Local Rule 2.02(a)*

**THE SCHALL LAW FIRM**
Brian J. Schall

2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile:  (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Plaintiff Christopher McCluney*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.      I, Christopher McCluney, make this declaration pursuant to §27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or §21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a complaint against Organization Treace Medical Concepts, Inc. ("Treace Medical") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Treace Medical securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Treace Medical securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet (Schedule "A") lists all of my transactions in Treace Medical securities during the Class Period, as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct this day of ___2/7/2025___.

Christopher McCluney

# Schedule A

**TREACE MEDICAL CONCEPTS INC**                              Ticker:    **TMCI**        Cusip:    **89455T109**
Class Period: 05/08/2023 to 05/07/2024

**Christopher McCluney**                                     DATE        SHARES     PRICE
                                              **Purchases:**  5/8/2023    40         $24.00